UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re U.S. Foodservice, Inc. Pricing Litigation, | Civil Action No. 07-1894 (AWT)<br>MDL No. 1894 (AWT) |
| This Document Relates To: | |
| Waterbury Hospital, *et al.*,<br><br>      Plaintiffs,<br><br> v.<br><br>U.S. Foodservice, Inc.,<br><br>      Defendant. | Civil Action No. 06-1657 (AWT) |
| Catholic Healthcare West,<br><br>      Plaintiffs,<br><br> v.<br><br>Koninklijke Ahold N.V., *et al.*,<br><br>      Defendant. | Civil Action No. 08-0004 (AWT) |
| Thomas & King, Inc.,<br><br>      Plaintiffs,<br><br> v.<br><br>Koninklijke Ahold N.V., *et al.*,<br><br>      Defendant. | Civil Action No. 08-0005 (AWT)<br><br>June 13, 2013 |

**USF'S RESPONSE TO PLAINTIFFS'
MOTION TO SUPPLEMENT THE RECORD OF THE
<u>THE COURT'S APRIL 23, 2013 ORDER TO SHOW CAUSE</u>**

NEWYORK 8855657

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ......................................................................................................3

ARGUMENT .................................................................................................................................4

    1.    Mr. Lee's Incomplete Deposition Testimony Does Not Show That Mr. Curran Will Provide Necessary And Adverse Testimony About Misrepresentations And Omissions Made To Him In Connection With The February 11, 2003 Letter ....... 5

        a.    Mr. Lee Did Not Testify As To Any Misrepresentations Or Omissions .... 6

        b.    Mr. Curran Has No Necessary Evidence About Any Misrepresentations Or Omissions Made In Connection With The February 11, 2003 Letter ... 7

    2.    Mr. Lee's Incomplete Deposition Testimony Does Not Show That Mr. Curran Will Provide Necessary Testimony That Is Adverse To USF Concerning The Circumstances Surrounding White & Case's Issuance And Withdrawal Of The February 11, 2003 Letter ........................................................................................ 9

    3.    Mr. Lee's Incomplete Deposition Testimony Does Not Show That Any White & Case Lawyers Will Provide Necessary Testimony That Is Adverse To USF Concerning The 2003 Internal Investigation ....................................................... 13

    4.    Under Plaintiffs' Theory, Plaintiffs' Counsel Must Disqualify Themselves ........ 15

# TABLE OF AUTHORITIES

## CASES

Adams v. Vill. Of Keesville,
 2008 U.S. Dist. LEXIS 61764 (N.D.N.Y. Aug. 8, 2008) ............................................. 4

Air Italy S.p.A. v. Aviation Tech., Inc.,
 2011 U.S. Dist. LEXIS 2506 (E.D.N.Y. Jan. 11, 2011) .............................................. 8

Ello v. Singh,
 2006 WL 2270871 (S.D.N.Y. Aug. 7, 2006) ............................................................. 14

Finkel v. Frattarelli Bros., Inc.,
 740 F. Supp. 2d 368 (E.D.N.Y. 2010) ......................................................................... 8

Metal Mgmt. v. Schiavone,
 2007 WL 2705523 (D. Conn. Sept. 13, 2007) ............................................................ 8

New York Indep. Contractors Alliance, Inc. v. Highway, Road and Street Constr.
 Laborers Local Union 1010 of Dist. Council of Pavers and Road Builders of
 Laborer's Int'l Union of N. Am.,
 2008 WL 5068870 (E.D.N.Y. Nov. 24, 2008) ............................................................ 4

Paretti v. Cavalier Label Co., Inc.,
 722 F. Supp. 985 (S.D.N.Y. 1989) ............................................................................ 14

Parke-Hayden, Inc. v. Lowe's Theatre Mgmt. Corp.,
 794 F. Supp. 525 (S.D.N.Y. 1992) .............................................................................. 4

Ritchie v. Gano,
 2008 U.S. Dist. LEXIS 67770 (S.D.N.Y. Sept. 8, 2008) ............................................. 5

Solow v. Conseco, Inc.,
 2007 WL 1599151 (S.D.N.Y. June 4, 2007) ............................................................ 14

## STATUES & RULES

D. Conn. Local R. 83.13 ....................................................................................................... 4

Fed. R. Evid. 801 ................................................................................................................ 15

Defendant US Foods, Inc., f/k/a U.S. Foodservice, Inc. ("USF") respectfully submits this Response To Plaintiffs' Motion To Supplement the Record of the Court's Order to Show Cause With the Deposition of Timothy Lee [Docket No. 418].[1]

## PRELIMINARY STATEMENT

Plaintiffs continue to use the Court's Order To Show Cause as an improper litigation tactic to argue for the first time – six and a half years after this case began – that USF's trial counsel should be disqualified under Local Rule 83.13, the advocate-witness rule. As an initial matter, the evidence Plaintiffs seek to include in the record – the deposition of former USF executive Timothy Lee – is not complete and, critically, USF has not yet questioned Mr. Lee at all. (Pl. Br. 2, n.1) In any event, Mr. Lee's deposition testimony does not show that any White & Case lawyer has any necessary, relevant, and admissible testimony that is prejudicial to USF, as required for disqualification. To the contrary, Mr. Lee's incomplete testimony demonstrates that disqualification is totally inappropriate.

This Court, at the May 3, 2013 hearing, asked Plaintiffs to identify a specific White & Case lawyer who would provide necessary testimony that is adverse to USF, and the specifics of the testimony (Ex. 2 (May 3, 2013 Tr.) at 55:25-56:12), and Plaintiffs were unable to do so. Plaintiffs now identify only Christopher Curran and George Paul as potential witnesses, and fail to identify any necessary, non-cumulative and relevant testimony from Mr. Curran or Mr. Paul that would be adverse to USF. Indeed, Plaintiffs fail to identify any testimony from Mr. Curran and Mr. Paul at all.[2] And contrary to Plaintiffs' conclusory statement that Mr.

---

[1] Unless otherwise stated, capitalized terms have the same definitions as set forth in USF's Memorandum of Law In Response to Order to Show Cause, dated April 29, 2013 ("USF Br." or "Opening Brief")

[2] Plaintiffs focus only on Mr. Curran, the author of the February 11, 2003 Letter.

Curran and Mr. Paul "are key witnesses whose testimony will be adverse to USF" (Pl. Br. 2), Mr. Lee testified that he does not even remember them. (Ex. 1 (Lee Tr.) at 217:9-12)

Plaintiffs' latest submission is merely a further effort to prejudice USF by eliminating its counsel after such counsel has spent more than 114,000 hours working on this case. The extent of Plaintiffs' efforts to prejudice USF was clearly demonstrated at the May 3, 2013 hearing when counsel argued, in response to the fact that the witnesses Plaintiffs have identified were no longer at White & Case – and, therefore, as a matter of law, could not support disqualification – that they no longer needed testimony from the attorneys who actually conducted interviews because "[g]iven the size of the actual investigation . . . it seems impossible for me to believe that there aren't people at White & Case currently that might be involved." (Ex. 2 (May 3, 2013 Tr.) at 61:12-15) In other words, Plaintiffs argue that they would simply avoid the testimony of (i) the percipient witness with personal knowledge of the facts (because they do not work at White & Case), (ii) the lawyers that led the investigations (because they do not work at White & Case), and (iii) the former White & Case partners that attended the interviews (because they do not work at White & Case), so they can search in vain for a junior attorney that would have no knowledge of the underlying matters and who did not even attend the interviews (so long as such unidentified attorney does still work at White & Case). It would be difficult to imagine a more dangerous litigation tactic than permitting a party to disqualify its adversary's counsel, more than six and a half years into a case, by asserting that they will avoid percipient fact witnesses so that they can try their case through speculative, non-existent, inadmissible, incompetent, irrelevant and cumulative testimony from a non-trial attorney at the law firm defending the adversary. Plaintiffs' latest effort to disqualify White & Case is meritless. Indeed, under the construct of

Plaintiffs' counsel, they should withdraw now or otherwise be disqualified because Plaintiffs' counsel can provide testimony that is adverse to the Plaintiffs' case.

## FACTUAL BACKGROUND

Plaintiffs cite to incomplete testimony of Mr. Lee in an effort to argue the merits of the case. The merits of the case are not relevant to disqualification. Nonetheless, Plaintiffs' assertion that Mr. Lee confirmed that the VASPs' "only purpose" was to shelter income is incorrect. In fact, before USF has had an opportunity to ask a single question, Mr. Lee confirmed that the VASPs provided valuable and important services: "Private Brands had a quality control person within that group. SMS had salespeople that went to the operating companies. Cross Valley Farms had salespeople as well as quality people within that." (Ex. 1 (Lee Tr.) at 72:19-73:7) The VASPs themselves, who have settled with Plaintiffs and are cooperating with them, confirm that they provided important and valuable services for USF. (Ex. 3 (Schofield Tr.) at 85:8-86:24, 96:15-97:9, 114:6-10, 118:2-120:19; 126:6-130:7, 194:13-195:4, 209:9-16, 234:22-235:16, 283:25-284:24; Ex. 4 (Redgate Tr.) at 97:2-101:12, 135:3-136:20, 155:15-156:24, 160:5-161:2, 164:21-165:8, 171:20-172:23, 173:10-174:18, 193:4-194:25, 197:23-198:12, 205:4-22, 352:2-22)



3

▊ The vast majority of USF customers that were contacted acknowledged that they were aware of the pricing practice here at issue of using an alleged controlled intermediary to set the landed cost and provide pass-back income. [Docket No. 135 (Norton Decl. at ¶¶ 35-46) Indeed, the expert testimony is that such pricing practice is the industry standard. (Id. at ¶¶ 22-24, 29- 34; [Docket No. 133] (Dell Decl. at ¶¶ 51-53)) Sysco, the largest food distributor, used a wholly-owned subsidiary, and the smaller distributors used wholly-owned, funded and controlled intermediaries, to set the landed cost and provide pass-back income. (Dell Decl. at ¶¶ 25-34)

## ARGUMENT

To obtain disqualification under the applicable test, the second paragraph of Local Rule 83.13(b), Plaintiffs "must meet a high burden of establishing that the attorney's testimony is vital and necessary at trial and that the testimony is substantially prejudicial and adverse to his client." Adams v. Vill. Of Keesville, 2008 U.S. Dist. LEXIS 61764, at *40 (N.D.N.Y. Aug. 8, 2008); see USF Br. at pp. 5-8. To satisfy the necessity prong, Plaintiffs must show that identifiable testimony is available exclusively from the attorneys (USF Br. at 9), is relevant (id. at 11-12) and admissible (id. at 17-20). "For testimony to be 'prejudicial' under the rule, 'the projected testimony of a lawyer or firm member must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" Parke-Hayden, Inc. v. Lowe's Theatre Mgmt. Corp., 794 F. Supp. 525, 527 (S.D.N.Y. 1992); New York Indep. Contractors Alliance, Inc. v. Highway, Road and Street Constr. Laborers Local Union 1010 of Dist. Council of Pavers and Road Builders of Laborer's Int'l Union of N. Am., 2008 WL 5068870, at *3 (E.D.N.Y. Nov. 24, 2008) (Speculation as to the content of potential testimony is

4

insufficient. Ritchie v. Gano, 2008 U.S. Dist. LEXIS 67770, at *40 (S.D.N.Y. Sept. 8, 2008) (denying motion to disqualify where "[t]he plaintiff has offered little besides speculation to dispute" defendant's assertion that testimony would support defendant's case).

Mr. Lee's testimony is irrelevant to disqualification. Mr. Lee has no information whatsoever about any White & Case testimony, as required. Moreover, Plaintiffs simply fail to identify any White & Case testimony that would be necessary, relevant, non-cumulative and adverse to USF. Indeed, Plaintiffs fail to identify any testimony at all from a White & Case attorney. Instead, Plaintiffs merely, and insufficiently, raise the following subjects: "(1) misrepresentations and omissions USF made to White & Case about the VASPs in connection with February 11, 2003 opinion letter; (2) the circumstances surrounding White & Case's issuance and withdrawal of the opinion letter; and (3) misrepresentations and omissions USF made to White & Case about the VASPs in connection with the 2003 internal investigation." (Pl. Br. 3) There is no White & Case attorney that would provide any necessary testimony that is adverse to USF with respect to any of those issues. To the contrary, any testimony from White & Case, to the extent it existed at all, would be irrelevant, incompetent, cumulative and not adverse.

1. **Mr. Lee's Incomplete Deposition Testimony Does Not Show That Mr. Curran Will Provide Necessary And Adverse Testimony About Alleged Misrepresentations And Omissions Made To Him In Connection With The February 11, 2003 Letter**

Plaintiffs' assertion that Mr. Lee's testimony shows that White & Case had knowledge of alleged "misrepresentations and omissions USF made to White & Case about the VASPs in connection with the February 11, 2003" Letter is incorrect and irrelevant. (Pl. Br. 3)

5

### a. Mr. Lee Did Not Testify As To Any Misrepresentations Or Omissions

Plaintiffs' assertion that there were misrepresentations made in connection with the February 11, 2003 Letter has nothing to do with disqualification.



NEWYORK 8855657

[redacted]

**b. Mr. Curran Has No Necessary Evidence About Any Misrepresentations Or Omissions Made In Connection With The February 11, 2003 Letter**

Plaintiffs fail to prove that Mr. Curran has any necessary testimony that would be adverse to USF concerning any purported misrepresentations or omissions made in connection with the February 11, 2003 Letter. <u>One</u>, Plaintiffs have failed to introduce any testimony from Mr. Curran about any misrepresentations made concerning the VASPs, as required. To the contrary, Mr. Curran has testified that he has never been aware of any misrepresentation or omission made about the VASPs: "I have never learned of any inaccuracy or misrepresentation in the factual assumptions provided by USF to White & Case concerning the VASPs. Nor did I learn that Messrs. Kaiser and Lee had omitted any relevant facts concerning the VASPs." (Curran Decl. ¶ 8) Plaintiffs do not, and cannot, challenge that record evidence. Indeed, Mr. Curran's testimony is corroborated by Mr. Lee who testified that he did not misrepresent anything to White & Case. (Ex. 1 (Lee Tr.) at 193:19-24)

<u>Two</u>, the fact that USF did not provide further details about the VASPs to White & Case is irrelevant to any issue in this lawsuit. To prevail in this case, Plaintiffs have to establish that USF defrauded customers. No customer ever spoke to White & Case, and no customer ever reviewed White & Case's February 11, 2003 Letter. And USF does not rely on the February 11, 2003 Letter, which is not even admissible. (USF Br. at 17-20)

7

Three, there is no disputed issue as to what factual assumptions were provided to White & Case because they are expressly set forth in the February 11, 2003 Letter.[3] Thus, no testimony is necessary to identify the factual assumptions provided to White & Case.

Four, evidence as to what USF told White & Case is not available exclusively from a White & Case attorney, as required. USF, the actual party to the case, can testify about the assumptions that it provided to White & Case (which are undisputed and which are expressly set forth in the February 11, 2003 Letter).

Five, Plaintiffs cannot demonstrate that any hypothetical, undisputed and cumulative testimony from White & Case with respect to the assumptions of the February 11, 2003 Letter would be adverse to USF. To the contrary, USF agrees that the assumptions provided are as set forth in the February 11, 2003 Letter. See Metal Mgmt. v. Schiavone, 2007 WL 2705523, at *3-4 (D. Conn. Sept. 13, 2007) (allowing law firm to continue as plaintiffs' counsel under Local Rule 83.13(b) based on plaintiffs' response that evidence from lawyer witness "is consistent with their position in this case, and [plaintiffs] concede they will not be prejudiced should [defendant] call [lawyer] as witness."); Finkel v. Frattarelli Bros., Inc., 740 F. Supp. 2d 368, 377 (E.D.N.Y. 2010) (denying motion to disqualify plaintiff's counsel where "based upon plaintiffs' opposition, there is no reason to believe that counsel's testimony would be inconsistent with their clients' account of the facts."); Air Italy S.p.A. v. Aviation Tech., Inc., 2011 U.S. Dist. LEXIS 2506, at *17 (E.D.N.Y. Jan. 11, 2011) (finding attorney's declaration "indicates that his testimony will not be adverse to his client's interests. Aviation has not met its 'burden of demonstrating

---

[3] Plaintiffs' baseless speculation that White & Case may have excluded from the February 11, 2003 Letter additional information is patently insufficient to seek disqualification, and is particularly inappropriate given Plaintiffs' reliance on Mr. Lee's testimony that he did not provide any additional information to White & Case. (Pl. Br. 6) Parties cannot disqualify adversaries, six and a half years into a case, by speculating, without basis, about testimony that does not exist.

8

specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial.'").

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████[4]

2. **Mr. Lee's Incomplete Deposition Testimony Does Not Show That Mr. Curran Will Provide Necessary Testimony That Is Adverse To USF Concerning The Circumstances Surrounding White & Case's Issuance And Withdrawal Of The February 11, 2003 Letter**

Notwithstanding Plaintiffs' statement that White & Case should be disqualified based on testimony concerning "the circumstances surrounding White & Case's . . . withdrawal of the opinion letter," Plaintiffs fail to identify any such purported testimony or even to discuss the subject. Mr. Lee provided no evidence concerning White & Case's withdrawal of the February 11, 2003 Letter, and Mr. Curran's testimony is as follows:

> I am informed that Plaintiffs in this case have asserted that my withdrawal of the February 11, 2003 Letter was the result of an investigation by White & Case, including interviews of various USF personnel. That is incorrect. As set forth in the March 6, 2013 letter, I withdrew the February 11, 2003 Letter because I had relied upon factual assumptions provided by Messrs. Kaiser and Lee. My contemporaneous emails also reflect that I withdrew the February 11, 2003 Letter because of concerns about relying upon factual assumptions provided by Messrs. Kaiser and Lee, not because I had learned of any inaccuracies in the February 11, 2003 Letter or because I had changed my conclusions.

(Curran Decl. ¶ 7) Plaintiffs do not, and cannot, challenge that record evidence. Plaintiffs' speculation about the non-existent testimony of Mr. Curran about the issuance of the February

---

[4] Plaintiffs suggest that there is a "*different* White & Case report on the relationship between the VASPs and USF." (Pl. Br. 5) There is no such report.

9

11, 2003 Letter is irrelevant and incorrect.

One, Plaintiffs' argument that USF sought the February 11, 2003 Letter "to appease Deloitte's concern as to legitimacy of the VASPs scheme" is made without any record citation and is irrelevant. (Pl. Br. 6) USF's reason for seeking the February 11, 2003 Letter is irrelevant to this case because Plaintiffs must prove that USF defrauded customers and breached cost-plus contracts; this case does not concern the accounting issue of whether VASP revenues had to be consolidated. Further, testimony from White & Case is not necessary because the fact that the February 11, 2003 Letter was sought for USF's outside auditor, Deloitte, in connection with Deloitte's audit of USF is not a disputed issue. Moreover, testimony from White & Case would be incompetent, as White & Case did not speak with Deloitte. Additionally, any White & Case (incompetent) testimony would be purely cumulative, as USF can testify why it sought the letter, and Deloitte has already testified as to that subject. (Ex. 5 (Kelser Tr.) at 279:2-10) Furthermore, regardless of the fact that Mr. Curran will not provide irrelevant, incompetent and non-cumulative evidence as to why USF sought the February 11, 2003 Letter, such testimony would not be adverse to USF, which does not contest that it was seeking to provide comfort to Deloitte about its accounting treatment of the VASP revenues. And following Deloitte's evaluation of the pricing practice, and not relying on White & Case's February 11, 2003 Letter in any way, Deloitte concluded that USF's pricing practice was appropriate and required no accounting adjustments. (Id. at 359:14-360:2; 366:4-8)

Two, Plaintiffs argument that the timing of the February 11, 2003 Letter is relevant to USF's intent is irrelevant to disqualification and incorrect. White & Case is not a necessary witness to the timing of the February 11, 2003 Letter. There is no dispute as to when the letter was delivered; it was provided on February 11, 2003, exactly as dated, so White & Case has no

10

non-cumulative evidence as to the timing of the February 11, 2003 Letter. ███████

████████████████████████████████████████

███████████████████████████████

███████████████████████████████████

██████████████████████████████

████████████████████████████████

████████████████████████████████

█████████████████████████████████

██████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████

███████████

Three, Plaintiffs again seek to distract from the clear issues that need to be assessed for disqualification in arguing that the February 11, 2003 Letter was "poorly investigated." (Pl. Br. at 7) The February 11, 2003 Letter is irrelevant because it is inadmissible. (USF Br. at 17-20)

████████████████████████████████

████████████████████████████████

█████████████████████████████████

████████████████████████████████

11

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Additionally, the extent of White & Case's investigation would be totally irrelevant to whether customers were defrauded or contracts were breached. And any testimony that White & Case did not investigate the factual assumptions supplied to it is no way adverse to USF, which agrees with that undisputed fact as expressly stated in the February 11, 2003 Letter.

Four, Plaintiffs' claim that "Plaintiffs believe that the VASP scheme would have been disclosed and consolidated sooner and, by extension, Plaintiffs would have recovered the amount of the illegal kick-backs long ago" if White & Case had not provided the February 11, 2003 Letter is irrelevant and incorrect. (Pl. Br. 7) White & Case is not a necessary (or competent) witness as to what Deloitte would have done absent the February 11, 2003 Letter. Moreover, White & Case did not provide an opinion that the VASPs had to be disclosed or consolidated (a pure accounting conclusion that White & Case could not have made), so Mr. Curran can provide absolutely no testimony about that non-existent event. Again, Plaintiffs have to prove that USF defrauded customers and breached their contracts, and White & Case's February 11, 2003 Letter to USF, which was not reviewed by any customer, is irrelevant. Further, Plaintiffs' "belief" about what would have happened had White & Case not provided the February 11, 2003 Letter is demonstrably incorrect, as Mr. Kesler testified that he never relied on the February 11, 2003 Letter for any purpose whatsoever. (Ex. 5 (Kesler Tr.) at 183:6-185:11) Additionally, although Plaintiffs make much of Deloitte's "concerns as to the legitimacy" of the VASPs, Plaintiffs disregard Deloitte's conclusions, "that the use of the VASP invoice price [in billings to customers under cost-plus contracts] was acceptable." (Id. at 366:4-8) Thus, Deloitte signed off

12

on an unqualified audit opinion that the VASPs did not need to be fully consolidated on USF's balance sheet.[5] (Id. at 359:14-360:2) And any testimony from Mr. Curran that he did not then believe that the VASPs were improper, and still does not believe so, is in no way adverse to USF.

    **3. Mr. Lee's Incomplete Deposition Testimony Does Not Show That Any White & Case Lawyer Will Provide Necessary Testimony That Is Adverse To USF Concerning The 2003 Internal Investigation**

 And Plaintiffs fail to: (i) identify who at White & Case would be called at trial on this subject; (ii) identify any testimony; (iii) identify how such testimony is relevant and admissible; (iv) demonstrate that such testimony is available exclusively from a White & Case attorney; or (v) show that any such testimony would be prejudicial to USF. The record evidence demonstrates that Plaintiffs cannot meet their burden.

    One, to the extent that Plaintiffs are arguing that the White & Case lawyers involved in Mr. Lee's interviews, Joe Armao and Paul Alfieri, purportedly have knowledge of the alleged misrepresentations in the February 11, 2003 Letter, such arguments are irrelevant to disqualification, as a matter of law, because such individuals are no longer employed by White & Case (and have not been employed by White & Case during the pendency of this case). (USF

---

[5] In reaching its conclusion, Deloitte relied on information provided to it from Venable LLP. The February 11, 2003 Letter had no role at all in that decision. (Ex. 5 (Kesler Tr.) at 183:6-185:11; 262:24-265:11; 278:7-279:14)

Br. at 15-16) No attorney still working at White & Case participated in the interviews or has any knowledge of misrepresentations.

Two, Mr. Curran, the author of the February 11, 2003 Letter, was not involved in the interviews, had no involvement in the investigation of USF's accounting irregularities, and has already testified that he never learned of any misrepresentation or omissions in the February 11, 2003 Letter. (Curran Decl. at ¶¶ 7-9) And Mr. Lee's testimony is consistent with Mr. Curran's testimony, as Mr. Lee confirmed that he did not misrepresent anything to White & Case in connection with the February 11, 2003 Letter. See supra at 6. Thus, Mr. Curran's testimony as to this subject matter would not be prejudicial to USF. See supra at 7-9.

Three, the non-existent testimony of an unidentified White & Case attorney concerning Mr. Lee's interview is purely cumulative of the testimony Plaintiffs already obtained from the person being interviewed, Mr. Lee. In addition to Mr. Lee, Mr. Armao, and Mr. Alfieri, the following other persons were also present during Mr. Lee's interviews: John Cherpock, Jim Gibson and Phil Ratliff of Protiviti. (Plaintiffs' Exhibit 1 at USF0496697) Thus, testimony from White & Case would be unnecessary (in addition to being non-existent). Ello v. Singh, 2006 WL 2270871, at *6 (S.D.N.Y. Aug. 7, 2006) ("A lawyer's testimony is 'necessary', 'only if there are no other witnesses to the circumstances at issue.'"); Solow v. Conseco, Inc., 2007 WL 1599151, at *4 (S.D.N.Y. June 4, 2007) ("'courts deem a lawyer's testimony necessary only if there [are] no other witnesses to the circumstances at issue.'"); Paretti v. Cavalier Label Co., Inc., 722 F. Supp. 985, 987 (S.D.N.Y. 1989) (denying disqualification where "to the extent that a party made an admission at the July and October meetings, there are five different persons who can testify about what the party said or did[, and t]herefore, [the attorney's] testimony would be cumulative").

14

### 4. Under Plaintiffs' Theory, Plaintiffs' Counsel Must Disqualify Themselves

In contrast to Plaintiffs' speculation that some unidentified non-trial counsel at White & Case has testimony that is adverse to USF, Plaintiffs' trial counsel does have adverse testimony in its possession that would, under Plaintiffs' theory, require disqualification of Plaintiffs' counsel. Directly contradicting Plaintiffs' allegations that "the VASPs had no legitimate or commercially reasonable business purpose and provided no legitimate or commercially reasonable service to USF" (Complaint at ¶ 41), Mr. Schofield testified that he "explain[ed] to Mr. Hartley," co-lead counsel for Plaintiffs, that his VASPs performed many legitimate and commercially reasonable services for USF, including, inter alia, that (i) they "handled the centralized purchasing," (ii) "[w]e developed the private brands or signature brands for U.S. Foodservice," (iii) "we also had a team of seafood merchandisers that went around to the different distribution centers and educated the different U.S. Foodservice sales reps on the products that we sold to them"; (iv) "[w]e had two buying offices, one in Salinas, California and another one in North Carolina, and we had a couple of produce inspectors" and (v) that the VASPs were vendors. (Ex. 3 (Schofield Tr.) at 53:10-21; 55:4-7; 65:19-66:5; 112:12-14; 304:3-5) Mr. Schofield also explained that his companies performed such legitimate services to additional trial counsel, including Richard Wyatt. (Id. at 66:6-67:7) If Plaintiffs intend to challenge the veracity of Mr. Schofield's testimony, as necessary for Plaintiffs to carry their evidentiary burden at trial, trial counsel's testimony about Mr. Schofield's previous testimony would be directly admissible to "rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Fed. R. Evid. 801(d)(1)(B).

Additionally, Plaintiffs' counsel solicited each of the Plaintiffs in this case. The statements that Plaintiffs' counsel made to Plaintiffs about the underlying facts is relevant to why

15

Plaintiffs are suing. Plaintiffs' counsel omitted to explain to the Plaintiffs the legitimate services provided by the VASPs, even though counsel was aware of the facts. The evidence is important, and adverse, as one of the named Plaintiffs testified that Plaintiffs would have no claim whatsoever if the VASPs provided such services.

> Q:....Can you identify any basis for Waterbury to continue to complain about the pricing practices of U.S. Foodservice if the VASPs were providing services?....
>
> A: I would say no.

(Ex. 6 (Wtb'y Tr.) at 126:2-22) Under Plaintiffs' theory of litigation – where parties call counsel as witnesses instead of percipient fact witnesses – Plaintiffs' trial counsel must recuse themselves under Local 83.13 based on the prejudicial testimony they possess concerning the many legitimate services provided by Mr. Schofield's companies.

Dated: June 13, 2013

Respectfully submitted,

*Douglas P. Baumstein*
Glenn M. Kurtz (#ct22471)
Douglas P. Baumstein (#phv01502)
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787
Tel.: (212) 819-8586
Fax: (212) 354-811

16

NEWYORK 8855657

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2013, I caused a copy of the foregoing to be served on the Court electronic filing system and on the following counsel of record for the Plaintiffs via electronic mail:

Richard Leslie Wyatt, Jr.
Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-419-2162
rwyatt@hunton.com

Todd Stenerson
Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-419-2184
tstenerson@hunton.com

Torsten Michael Kracht
Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-419-2149
tkracht@hunton.com

R. Laurence Macon
Akin Gump Strauss Hauer & Feld LLP
300 Convent Street
Suite 1500
San Antonio, TX 78205
210-281-7222
lmacon@akingump.com

Joe R. Whatley, Jr.
380 Madison Avenue
23rd Floor
New York, New York 10017
Tel. 212-447-7070
jwhatley@wdklaw.com

James E. Hartley, Jr.
Charles Hellman
Drubner, Hartley & Hellman
500 Chase Parkway
Waterbury, CT 06708-3346
Tel. 203-753-9291
Fax. 203-753-6373
jhart@dholaw.com

*Douglas P. Baumstein*
Douglas P. Baumstein

17

NEWYORK 8855657