UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re U.S. Foodservice, Inc. Pricing Litigation, | Civil Action No. 07-1894 (AWT) MDL No. 1894 (AWT) |

This Document Relates To:

| | |
|---|---|
| Waterbury Hospital, *et al.*, | Civil Action No. 06-1657 (AWT) |
| Plaintiffs, | |
| v. | |
| U.S. Foodservice, Inc., | |
| Defendant. | |
| Catholic Healthcare West, | Civil Action No. 08-0004 (AWT) |
| Plaintiff, | |
| v. | |
| Koninklijke Ahold N.V., *et al.*, | |
| Defendants. | |
| Thomas & King, Inc., | Civil Action No. 08-0005 (AWT) |
| Plaintiff, | |
| v. | April 11, 2014 |
| Koninklijke Ahold N.V., *et al.*, | |
| Defendants. | |

**OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE
THE COURT'S ORDER COMPELLING US FOODS, INC. TO
PRODUCE ELECTRONIC DATA AND FOR ATTORNEY'S FEES AND COSTS**

Defendant US Foods, Inc., f/k/a U.S. Foodservice, Inc. ("USF") submits this Opposition to Plaintiffs' Motion to Enforce The Court's Order Compelling USF To Produce Electronic Data And For Attorney's Fees and Costs (the "Motion").[1]  [Docket No. 471]

## PRELIMINARY STATEMENT

Plaintiffs incorrectly claim that USF has not produced the indices of backup media required by this Court's Order (the "Order") on their Motion to Compel USF to Produce Electronic Data (the "Electronic Data Motion").  USF has complied with the Order and produced to Plaintiffs all indices that could reasonably contain the sales or other data sought by Plaintiffs in the Electronic Data Motion.  Moreover, USF created indices for Plaintiffs based on a physical inspection of backup tapes.  Despite USF's good faith efforts to obtain indices of backup tapes of transactional data, Plaintiffs nonetheless filed this Motion – without the meet and confer required by Local Rule 37 – incorrectly accusing USF of "deception" and "hiding" indices because USF did not produce indices of backup media located in storage facilities in Charlotte, North Carolina; Las Vegas, Nevada; and Minneapolis, Minnesota.

The facilities, however, do not store the transactional data at issue in the Electronic Data Motion.  Consequently, the indices related to these facilities are not covered by the Order.  Indeed, the Minneapolis facility stores only data for USF's kitchen equipment division.  The VASPs did not sell kitchen equipment and the contracts at issue do not cover distribution of kitchen equipment.  The Las Vegas and Charlotte facilities likewise do not store USF's transactional data such as the sales or customer data sought in the Electronic Data Motion.  Rather, they store backups of local divisional files from the Las Vegas and Charlotte divisions.

---

[1] In support of its opposition to the Motion, USF submits the Declaration of Paul Schwartz ("Schwartz Decl.") and Douglas P. Baumstein ("Baumstein Decl.")  All references to "Ex.__" refer to an exhibit to the Declaration of Douglas P. Baumstein.

In any event, to avoid burdening the Court with unnecessary disputes, USF has now produced the Charlotte, Las Vegas, and Minneapolis indices to Plaintiffs, so the Motion is now moot.

As USF produced all indices that could reasonably contain the transactional data at issue in the Electronic Data Motion as well as the irrelevant Charlotte, Las Vegas, and Minneapolis indices, there is nothing for this Court to "enforce."  Plaintiffs are also not entitled to costs because they filed this Motion without conducting a meet and confer with USF's counsel, in violation of Local Rule 37.  Had they met and conferred, this Motion could have been avoided, as USF would have explained that (i) the Charlotte, Las Vegas, and Minneapolis facilities do not store backups of the transactional data sought in the Electronic Data Motion and (ii) the indices from these facilities are not covered by the Court's Order, but that USF would produce such indices anyway.  Moreover, USF is not currently aware of other indices of backup media that could reasonably contain the transactional data sought by the Plaintiffs.  The Motion should be denied.

## **BACKGROUND**

A.      **Plaintiffs' Electronic Data Motion**

This litigation concerns the time period from 1998 through 2005 when USF's divisions purchased food from the entities known as the VASPs.  By May 2012, USF produced to Plaintiffs all its electronic sales data from the period 2002 through 2005 from USF's "Data Warehouse."  USF also advised Plaintiffs, as early as 2008, that the Data Warehouse did not maintain electronic sales data from prior to 2002.  (Ex. 1 at 2)  In early 2013, USF identified and restored a handful of backup tapes in off-site storage facilities that may contain sales data from 1998 to 2001 based on a review of indices.  The sales data that was included on such tapes was produced to Plaintiffs on March 22, 2013.  (Schwartz Decl. ¶ 3; Ex. 2; Ex. 3)

Plaintiffs' Electronic Data Motion sought the production of the backup tape indices USF reviewed to search for historical sales data.  Plaintiffs argued that they were entitled to such indices so that they could make their own determination as to whether USF's backup tapes contained sales data from the time period of 1998-2001.  (Electronic Data Motion at 8-9)  At the May 7, 2013 oral argument, after USF argued that Plaintiffs never served a formal document request for indices of backup tapes, Plaintiffs stated to this Court that the indices were responsive to a document request – served after the Electronic Data Motion was filed – seeking "[a]ll indices of backup tapes, backup media, or microfiche images of sales data that USF is storing at any Iron Mountain facility or other document storage or backup facility."  (Plaintiffs' Ex. D at 294:11-24)[2]  In its May 16, 2013 Order on the Electronic Data Motion (the "Order"), this Court granted that portion of the Electronic Data Motion seeking the production of the backup tape indices.  (Plaintiffs Ex. B at 3)

## B.   USF Complied With The Court's Order

Following the Order, on May 29, 2013, USF produced the indices it reviewed to search for the historical sales data discussed at the hearing on the Electronic Data Motion.  (Schwartz Decl. ¶ 3)  USF's review and production of indices was not limited to indices maintained by USF's own computer systems, but also included indices provided by USF's outside data storage vendor, Iron Mountain,[3] in response to USF's request for all indices listing backup tapes at the Iron Mountain facility in Phoenix, Arizona, where USF stores the backups of its transactional data.  (Id. at ¶¶ 4,9)  Indeed, Craig Koon, a former USF information technology employee that

---

[2] USF's counsel also made clear at the May 7 oral argument that his understanding was that the indices at issue were the "sales data indices" being sought by Plaintiffs.  (Id. at 278:17-18)

[3] Notably, Plaintiffs also separately served a subpoena on Iron Mountain on February 6, 2013 which requested "a complete index and log of all electronic media that Iron Mountain is storing or has stored for USF at any time between 1998 and present."  (Ex. 5)  USF did not object to this subpoena, and before the Court held oral argument on the Electronic Data Motion, Iron Mountain made a production that included backup tape indices.

Plaintiffs have engaged as a consultant, acknowledged that, to the extent USF's sales data was not maintained in the Data Warehouse, it may exist on backup tapes in Iron Mountain's Phoenix facility.  (Ex. 4 at 1) ("Mr. Koon recalls that as of December 2005, the sales data was located on servers in USF's Phoenix, AZ data center and also on backup tapes stored at Iron Mountain. . . . Plaintiffs confirmed through a former manager of USF's Phoenix data facility that the tapes were sent to Iron Mountain's facility in Tempe [sic], AZ.")

Besides backup tapes of transactional data, the Phoenix Iron Mountain facility also stores local file server backups from USF's more than eighty existing and historical divisions, with the exception of two divisions, Las Vegas and Charlotte.  (Schwartz Decl. ¶ 4)  Local file server data does not include USF's transactional data, but rather consists of non-transactional data including Microsoft Word and Excel files created by employees at such divisions, locally saved e-mail files and other computer and software backup information, such as internet favorites lists and anti-virus software.  (Id. at ¶ 8)  Plaintiffs' own witness, Jim Campbell, the owner of a USF's tape-storage vendor that was subsequently acquired by Iron Mountain, confirmed that most of USF's divisional data was centralized at the Phoenix facility.  (Plaintiffs' Ex. C at ¶¶ 23-24) ("By 2007, all but a handful of USF's divisional Tapes had been moved to [Iron Mountain's] Phoenix storage facility, and all but a handful of USF's 85+ divisions were sending all offsite data storage to [Iron Mountain].").

USF's May 29, 2013 production included all the listings of backup media that USF believed could contain USF sales data from 1998 to 2001, including the listings that USF reviewed in March 2013 to search for backup tapes with sales data and which Plaintiffs requested in the Electronic Data Motion.  Moreover, one of these indices had been created at the direction of USF in March 2013 based on an extensive manual review, paid for by USF, of the

physical labeling on 33,000 tapes, in search of tapes potentially containing sales data from 1998-2001.  (Schwartz Decl. ¶ 5)   For this index, Iron Mountain personnel copied the written description of all tapes that had a descriptive label physically stuck to the tape.  (Id.)  USF was under no obligation to conduct such a review, or to produce an index that was created at the direction of attorneys for the purpose of this litigation, but it did so anyway.  The May 29, 2013 production also included a report from USF's "Tape Management System" (or "TMS") that included the listings USF reviewed in order to produce backup tapes with sales data in March 2013, and which Plaintiffs requested in the Electronic Data Motion.  (Id. at ¶ 6)  Plaintiffs assert that TMS data was not produced in May, but the index bates labeled USF4249569 and produced in May included "tms report" in its title.  (Baumstein Decl. ¶ 2)

Moreover, on August 15, 2013, following additional discussions with Plaintiffs, USF produced additional TMS data.  This data listed the offsite backup tapes maintained for data recovery that USF had reviewed as well as other types of media which was not necessarily stored offsite and which USF did not believe would contain transactional data, as such media did not backup USF's system data for disaster recovery purposes, but rather stored information on an ad hoc basis.  (Schwartz Decl. ¶ 7)  After USF recently learned that the production of TMS data did not include data for the A-System – the system for the divisions USF purchased from Alliant in December 2001 – USF produced the TMS A-System data, even though the Alliant divisions did not begin transacting with the VASPs in any substantive way until 2002, and therefore the relevant A-System transactional data was already produced in USF's production from its Data Warehouse years ago.  USF is aware of no other indices of transactional data to produce.

## ARGUMENT

**A.      USF Did Not Violate The Order**

      **1.      The Charlotte, Las Vegas, and Minneapolis Indices Are Not Covered By The Court's Order**

Plaintiffs incorrectly argue that USF did not comply with the Order because USF did not produce indices of local backup media in storage facilities belonging to third-party vendors in the following three locations: Charlotte, North Carolina; Las Vegas, Nevada; and Minneapolis, Minnesota.  None of these indices, however, list backup tapes containing the transactional data sought by Plaintiffs in the Electronic Data Motion, nor was there any reason to believe they did.

The Minneapolis facility stores information from USF's separate kitchen equipment division, US Foods Culinary Equipment & Supplies.  (Schwartz Decl. ¶ 8)  This separate business, and the backup tapes for such business, plainly has nothing to do with the claims in this case.  The VASPs did not sell kitchen equipment and the contracts at issue in this case do not cover distribution of kitchen equipment.

The other facilities store backup tapes containing divisional file server data, not the transactional data Plaintiffs sought in the Electronic Data Motion.  (Id. at ¶ 8)  The fact that the Charlotte and Las Vegas facilities do not store back-up tapes with transactional data has been confirmed by recent events.  First, Plaintiffs have had the index of backup tapes stored in the Las Vegas facility since early December 2013, when such index was produced to them by Recall, the third party vendor that owns the storage facility.   During the four months that Plaintiffs have had this index, they have not requested a single tape from this facility.  Second, Plaintiffs have had the Charlotte index since January, and they have requested copies of 26 tapes.  There was no indication from the index that these 26 tapes would be relevant because the index contains no description of the contents of these or any other tapes.  Rather, it appears that Plaintiffs randomly

selected all the daily file server backups from March 2003.  In any event, USF has generated a listing of the contents of those 26 tapes, which was then shared with Plaintiffs.  A review of such listing confirms that the tapes contain local file server data, not USF's transactional data. (Schwartz Decl. ¶ 10)

The information stored at the three facilities Plaintiffs identified in the Motion is not the information sought in the Electronic Data Motion and, therefore, the indices of such data are not covered by the Order.  In any event, to avoid unnecessary disputes, USF has produced the indices from the Charlotte, Las Vegas, and Minneapolis divisions, even though there is no basis to believe that transactional data is stored there.

### 2.    USF Did Not "Hide" Responsive Indices

Plaintiffs incorrectly assert that USF has engaged in "deception" by "hiding" indices because the Charlotte, Las Vegas and Minneapolis facilities had not been produced.  (Motion at 4-5)

First, as addressed above, the Charlotte, Las Vegas, and Minneapolis indices do not list backup tapes with transactional data, but rather contain unrelated information from local divisions and a separate line of business not at issue here.[4]  See supra at p. 6.  Thus, USF did not "hide" indices.  Rather, USF produced indices that listed backup tapes with the transactional data Plaintiffs sought in the Electronic Data Motion, and there are simply no other indices of transactional data to produce.

Second, USF did not "hide" indices because there was already an outstanding subpoena to Iron Mountain, served on February 6, 2013, which requested the entire inventory of backup

---

[4] Plaintiffs assert that they asked USF to confirm whether the Charlotte, Las Vegas, and Minneapolis facilities were searched by USF and to provide indices of the tapes at those facilities, and that "USF simply ignored the request." (Motion at 4)  USF did not ignore Plaintiffs' request.  Rather, USF stated that "USF is investigating such matters and intends to provide you with responses."  (Plaintiffs' Ex. M)  Plaintiffs then failed to meet and confer, as required by Local Rule 37, before filing this Motion.

tapes it stored for USF, and Iron Mountain had commenced production before the Court's oral argument on the Electronic Data Motion. (Ex. 5, Request 2 ("a complete index and log of all electronic media that Iron Mountain is storing or has stored for USF at any time between 1998 and present.") Plaintiffs do not dispute that the Charlotte and Las Vegas facilities are both controlled by Iron Mountain, and that even before the Electronic Data Motion was decided, Iron Mountain made a responsive production, which included indices of backup tapes. USF could not "hide" Iron Mountain indices, when it was expected that Iron Mountain would have independently produced all its USF indices to Plaintiffs anyway.

**B.**     **Plaintiffs Are Not Entitled To Costs**

Plaintiffs' request for an award of the costs they incurred in connection with this Motion and their January 24 site visit to the Charlotte Iron Mountain facility should be denied because USF has complied with the Order by timely producing the indices sought by Plaintiffs in the Electronic Data Motion.

Plaintiffs further fail to show that their trip to Charlotte, North Carolina was necessary or justified. Plaintiffs assert that an Iron Mountain employee testified to the existence of backup media stored in Charlotte. Plaintiffs omit, however, that the witness gave no indication that the information contained sales data. Rather, he testified that he did not know what information was stored there. (Ex. 7 at 54:2-4) (Q: And do you know what kind of electronic media Iron Mountain is storing for [USF] in North Carolina? A: No, sir.") As noted above, however, Plaintiffs already were in possession of testimony from two witnesses, Mr. Koon and Mr. Campbell, confirming that, to the extent not in its Data Warehouse, USF's transactional data was maintained in backup tapes in Phoenix. Moreover, rather than asking USF what the Charlotte

Iron Mountain Facility was used for, Plaintiffs demanded to inspect the tapes, and USF consented.[5]

Plaintiffs are also not entitled to costs because they failed to meet and confer as required by Local Rule 37.  After the close of business, on Wednesday, March 5, 2014, based on the index that Plaintiffs received at the Charlotte facility six weeks earlier, Plaintiffs sent a letter demanding that USF conduct a further investigation of its backup tape indices.  (Plaintiffs Ex. Q) Plaintiffs also demanded that if USF was unwilling to conduct such an investigation, that USF provide a time for a meet and confer on Monday, March 10, just 3 business days later.  (Id.) USF immediately began investigating the issues raised in Plaintiffs' letter, and USF's counsel held a call with USF's information-technology personnel on March 10, the earliest date that all knowledgeable parties were available.  (Baumstein Decl. ¶ 3)  USF also scheduled a follow-up call on March 14 to discuss the results of the investigation.  (Id.)  Before USF had the chance to hold the follow-up call, and without calling to meet and confer, Plaintiffs filed this Motion.  (Id.) Plaintiffs' failure to call is particularly telling as the parties have regularly communicated with each other by phone about discovery and other issues throughout this case, and have held frequent discussions with Parajudicial Officer James Hawkins to resolve issues without Court intervention.  For example, Plaintiffs recently threatened to file a discovery motion with respect to a missing password for a hard drive USF produced.  After USF referred the matter to Mr. Hawkins, the matter was resolved.  (Id. at ¶ 4)

Plaintiffs' Motion has been submitted in violation of Local Rule 37, which states:

---

[5] Nor would production of an index for Charlotte have made a difference.  The Charlotte Iron Mountain index does not contain any descriptions of the tapes' contents (Ex. 8), so to the extent Plaintiffs believed an inspection of the tapes might help them glean information about their contents, the index would not have changed this view.  Indeed, Plaintiffs made such a site visit to the Phoenix Iron Mountain facility in August 13, 2013, even after receiving the indices for this facility, refuting the notion that the irrelevant Charlotte index would have deterred them from going to Charlotte.

No motion pursuant to Rules 26 through 37, Fed. R. Civ. P. shall be filed unless counsel making the motion has conferred with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy, and to arrive at a mutually satisfactory resolution. In the event the consultations of counsel do not fully resolve the discovery issues, counsel making a discovery motion shall file with the Court, as a part of the motion papers, an affidavit certifying that he or she has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court, and has been unable to reach such an agreement.

Discovery motions are routinely denied for failure to comply with Local Rule 37.  See Silva v. Wyeth, Inc., 2012 WL 3113049, at *1 (D. Conn. July 31, 2012) (denying motion to compel where "Plaintiff's motion contains no affidavit of counsel certifying that 'he or she has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court'"); Leniart v. Murphy, 2012 WL 6200640, at *1 (D. Conn. Dec. 11, 2012) (denying motion to compel where plaintiff failed to provide any documentation specifying his attempt to resolve discovery issues and specifying which issues were resolved and which remain); see also Scheduling Order [Docket 280] at ¶ 4 ("All papers submitted shall comply with Local Rule 37.  Failure to comply with the Local Rules may result in the motion being denied.").

Plaintiffs acknowledge that the required meet and confer was not held, but justify the filing of the Motion by incorrectly asserting that "USF refuses to respond to [Plaintiffs'] request to meet and confer."  (Kracht Aff. ¶ 7) USF does not, and has not, refused to meet and confer. Rather, USF simply did not meet and confer within the arbitrary, unilateral, and unreasonable deadline Plaintiffs purported to impose, which gave USF two business days to respond to a letter that Plaintiffs had been preparing for over six weeks.  Plaintiffs have repeatedly attempted to impose such deadlines in connection with discovery letters, and USF has repeatedly advised Plaintiffs that it is not bound by such unilateral deadlines, and that it is entitled to take a

reasonable amount of time to investigate the issues Plaintiffs raise and to respond.  (<u>See</u> <u>e.g</u>., Ex. 6)  Plaintiffs were aware that the issues raised in their March 5, 2014 letter would take time to investigate, yet they gave USF two business days to respond, and then filed the Motion five days thereafter.  Again, despite USF's proven efforts to cooperate concerning discovery matters and the regular lines of communications between the parties, Plaintiffs did not even attempt to call USF to meet and confer before filing the Motion.  (Baumstein Decl. ¶ 3)

<b><u>CONCLUSION</u></b>

For the foregoing reasons, USF respectfully requests that Plaintiffs' Motion to Enforce The Court's Order Compelling USF To Produce Electronic Data And For Attorney's Fees and Costs be denied.


Dated: April 11, 2014                                                    Respectfully submitted,

                                                                         <u>/s/  Glenn M. Kurtz</u>
                                                                         Glenn M. Kurtz (#ct22471)
                                                                         Douglas P. Baumstein (#phv01502)
                                                                         White & Case LLP
                                                                         1155 Avenue of the Americas
                                                                         New York, NY 10036-2787
                                                                         Tel.:   (212) 819-8586
                                                                         Fax:   (212) 354-811

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2014, I caused a copy of the foregoing to be served on the Court electronic filing system and on the following counsel of record for the Plaintiffs via electronic mail:

Richard Leslie Wyatt, Jr.
Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-419-2162
rwyatt@hunton.com

R. Laurence Macon
Akin Gump Strauss Hauer & Feld LLP
300 Convent Street
Suite 1500
San Antonio, TX 78205
210-281-7222
lmacon@akingump.com

Todd Stenerson
Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-419-2184
tstenerson@hunton.com

Joe R. Whatley, Jr.
Whatley Drake & Kallas, LLC
1540 Broadway, 37th Floor
New York, New York 10036
212-447-7070
jwhatley@wdklaw.com

Torsten Michael Kracht
Hunton & Williams LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
202-419-2149
tkracht@hunton.com

James E. Hartley, Jr.
Charles Hellman
Drubner, Hartley & Hellman
500 Chase Parkway
Waterbury, CT 06708-3346
Tel. 203-753-9291
Fax. 203-753-6373
jhart@dholaw.com

*/s/ Douglas P. Baumstein*
Douglas P. Baumstein