UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| *In re U.S. Foodservice, Inc.* <br> *Pricing Litigation* <br><br> This Document Relates To: All Matters | Case No. 3:07-md-1894 (AWT) |

REPORT OF PROFESSOR ALEXANDRA D. LAHAV
ON THE REASONABLENESS OF CLASS COUNSEL'S
<u>REQUEST FOR AN AWARD OF ATTORNEYS' FEES</u>

I, Alexandra D. Lahav, declare as follows:

**Summary of Opinion**

1. An award of attorneys' fees from a common fund in a class action is at the discretion of the court. In the Second Circuit, the reasonableness of attorneys' fees is measured by a number of factors, including the effort and time expended by counsel, the quality of the representation, and the risk assumed by counsel in the litigation. This case is a nationwide RICO class action. After eight years of active litigation, including successful defense against a motion to dismiss, a successful motion for class certification, successful appeals from class certification, and a number of discovery related motions, class counsel achieved an excellent result for their clients. I conclude that the nature of this RICO suit, the quality and quantity of counsel's

1

work, and the result achieved make a fee award of one third of the common fund reasonable in this case.  I conclude that such an award is consistent with Second Circuit precedent.  I also conclude that it is consistent with Connecticut state law, although Connecticut law is not directly relevant to the Court's inquiry.

**Qualifications**

2. I am the Joel Barlow Professor at the University of Connecticut School of Law where I teach Civil Procedure, Complex Litigation and related courses.  I am submitting this declaration in support of plaintiffs' motion for attorneys' fees.  I offer my opinions and analysis for the Court's consideration based on my background and experience, recognizing that my role is limited and that the Court will make the ultimate decision.

3. I joined the University of Connecticut in 2004, received tenure in 2009 and was appointed Joel Barlow Professor of Law in 2013.  I received my BA from Brown University and my JD from Harvard Law School, *magna cum laude*.  After graduating law school I served as a law clerk to Justice Alan Handler of the New Jersey Supreme Court and worked at a small law firm now called Emery Celli Brinckerhoff & Abady LLC, where I participated in litigating civil rights cases, including the largest civil rights settlement in New York City history.  I have also been a visiting professor at Yale, Columbia, Fordham and Tel Aviv University Law Schools and am

slated to be a visiting professor at Harvard Law School in 2015. I am admitted to practice in New York.

4. In my academic career I have focused on the study of class actions and aggregate litigation. My articles on these topics have been published in high ranking law reviews, including most recently Vanderbilt Law Review, Texas Law Review and UCLA Law Review. My work has been cited in a number of United States District Court Opinions, s*ee, e.g., D.S. ex rel. S.S. v. New York City Dept. of Educ.*, 255 F.R.D. 59, 64 (E.D.N.Y. 2008); *Malibu Media, LLC v. John Does 1-16*, 2012 WL 4717893, *12, 2012 Copr. L. Dec. P 30, 324 (E.D. Pa. 2012); *Mwani v. Laden*, 2013 WL 2325166, at *5 (D.D.C. 2013); *In re Heartland Admin. Payment Systems Customer Data Sec. Breach Litig.*, 2012 WL 948365, at *39 (S.D. Tex. Mar 20, 2012) (NO. MDL 09-2046)); *In re Nexium (Esomeprazole) Antitrust Litigation*, 297 F.R.D. 168 (D. Mass. 2013), and by the California Supreme Court, *see Duran v. U.S. Bank Nat'l Assoc.*, 172 Cal. Rptr. 3d 371 (2014). My work has also been cited in the ALI *Principles of the Law of Aggregate Litigation* § 2.02 (2012), Wright & Miller's *Federal Practice and Procedure* treatise and the Manual on Complex Litigation (4th). I am the co-author (with Martha Minow, Steve Subrin, Mark Brodin and Thomas Main) of a casebook currently used in 36 law schools by over 50 law professors: *Civil Procedure, Doctrine, Practice and Context* (Aspen, 4th ed. 2012). I also co-author a yearly review of class action developments with John C. Coffee, Jr., the Adolf A. Berle Professor of Law at Columbia Law

School, which keeps me up to date on the latest developments in class action jurisprudence. I frequently present to lawyers and legal academics on class action topics. For example, I am slated to present at the ABA's 18th Annual Class Action Institute in October 2014 in Chicago, IL. Additional information regarding my qualifications and experience—including a complete list of my publications—can be found in my curriculum vitae, attached hereto as Exhibit A.

5. As a result of my teaching and scholarly research, I am familiar with the rules governing attorneys' fees in class actions and other contexts. In the course of my research on class actions I have reviewed hundreds of motions for class certification and class action complaints. At the University of Connecticut I regularly teach a course on Complex Litigation which covers attorneys' fees in class actions and in mass torts in some depth. I have taught a course called Tort Law and Alternatives (an advanced torts class) in which attorneys' fees are covered, as well as the required course on Professional Responsibility, which covers, among other things, the ethical rules governing attorneys' fees.

6. I offer this report solely in my capacity as a class action scholar, not in my capacity as an employee of the State of Connecticut.

7. In preparing this Report, I reviewed case law and scholarly articles, as well as the following documents relating to this case:

- Consolidated and Amended Class Action Complaint;

- Plaintiffs' Motion for Class Certification;

- Defendant's Opposition to Motion for Class Certification;

- Plaintiffs' Reply in Further Support of Motion for Class Certification;

- Defendant's Sur-Reply in Opposition to Motion for Class Certification;

- Plaintiffs' Response to Defendant's Sur-Reply;

- Ruling on Motion for Class Certification;

- Brief for Defendant-Appellant (on Defendant's Rule 23(f) motion);

- Brief for Plaintiffs-Appellees (on Defendant's Rule 23(f) motion);

- Reply Brief for Defendant-Appellant (on Defendant's Rule 23(f) motion);

- Supplemental Authority Letters to Clerk of Court (on Defendant's Rule 23(f) motion);

- Second Circuit Opinion on Defendant's Rule 23(f) motion, *In re: US Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013);

- Plaintiffs' Memorandum In Support of Their Motion To Compel USF to Produce Its Index of Documents Produced in Government Investigations and Related Cases and to Permit Inspection and Copying of Selected Documents;

- Memorandum of Law in Support of Plaintiffs' Motion to Enforce the Court's Order Compelling USF to Produce Electronic Data and for Attorney's Fees and Costs; and

- Report of Professor Charles Silver on the Reasonableness of Class Counsel's Request for an Award of Fees and Expenses from the Common Fund (hereinafter "Silver Report").

**Law Applicable to Fee Awards in Common Fund Cases**

8. The class action rule provides that a "court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Second Circuit considers the following six factors in determining the reasonableness of a fee award in common fund cases: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Whether to adopt a percentage of the fund approach or a loadstar approach is at the court's discretion. *Id*.

9. This nationwide RICO case was transferred to the District of Connecticut as a result of a ruling by the Judicial Panel on Multidistrict Litigation. MDL-1894. Accordingly, the relevant standard for determining attorneys' fees is the federal one. Fed. R. Civ. P. 23(h). In class actions bringing state law claims, the Second Circuit has taken note of state law. *See, e.g., In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 126 (2d Cir. 2014) (noting that New York law on fees is consistent with

federal class action jurisprudence). The gravamen of this complaint sounds in federal law, so the federal standard will apply. Nevertheless, for completeness I have undertaken a review of Connecticut law and conclude that an award of one third of the common fund in a case like this one is reasonable under both Connecticut law and federal law.

10. In Connecticut, the state courts look to federal jurisprudence to determine class action fee awards. For example, Connecticut state courts adhere to the common fund doctrine articulated by the United States Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L.Ed.2d 676 (1980). *See Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 511, 517, 970 A.2d 583, 588 (2009) (citing *Goldberger, supra*). Under that doctrine, "attorneys whose efforts create the fund are entitled to a reasonable fee to be taken from the fund" because "'the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.'" *Town of New Hartford*, 291 Conn. at 518 (quoting *Boeing*, 444 U.S. at 478). Because there is little class action jurisprudence in Connecticut, the state courts have taken the lead from the federal courts except where the procedural rules clearly diverge. *Rivera v. Veterans Mem'l Med. Ctr.*, 262 Conn. 730, 737, 818 A.2d 731, 736 (2003) (stating that "[o]ur class action requirements…are similar to those applied in the federal courts."). Although fees awarded on the basis of a common fund do not often arise

in Connecticut state courts, in general the factors applicable in Connecticut for determining whether a fee is reasonable are similar to the Second Circuit factors, including "the time and labor required, the novelty and difficulty of the questions involved, and the fee customarily charged in the locality for similar legal services." *Sorrentino v. All Seasons Servs., Inc.*, 245 Conn. 756, 775, 717 A.2d 150, 159 (1998) (citing Connecticut Rule of Professional Conduct 15(a)). The "degree of risk that is presented by the contingency" is also relevant. *Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 272, n.76, 828 A.2d 64, 105 (2003). Connecticut courts well understand the need to incentivize lawyers who undertake risky cases that assist in the enforcement of the law. *See, e.g., Simms v. Chaisson*, 277 Conn. 319, 334, 890 A.2d 548, 557 (2006) (noting that "the recovery of attorney's fees is appropriate as an incentive for attorneys to represent" litigants in civil rights cases even when only nominal damages are awarded).

**One Third of the Common Fund is a Reasonable Fee in This Case**

11. A fee award of one third of the common fund, such as that requested by class counsel in this action, is reasonable under Connecticut law. "Contingency fees based on one-third recovery are standard in Connecticut." Mark A. Dubois & James F. Sullivan, *Connecticut Legal Ethics & Malpractice* 331 (2012). *See also Sorrentino*, 245

Conn. 756 (reversing trial court's reduction of contingency fee, although the case in question was not a class action).[1]

12. More importantly, an award of one third of the common fund in this case is reasonable under Second Circuit precedent when the *Goldberger* criteria are applied. *Goldberger*, 209 F.3d at 50 (describing factors to be considered in fee awards including time and labor expended by counsel, quality of the work performed, complexity and risk of the litigation, and public policy). *See also Kiefer v. Moran Foods*, LLC, 12-CV-756 WGY, 2014 WL 3882504 (D. Conn. Aug. 5, 2014) (awarding attorney's fees of one third of the common fund in wage and hour class action).

13. First, the time and labor expended by counsel has been substantial. Class counsel undertook to perform a substantial amount of work over a period of eight years without payment, and invested significant amounts in data analysis and other costs of pursuing this litigation. As Prof. Silver notes in his report, "by the time the proposed settlement is approved (assuming it will be), Class Counsel will have expended attorney-hours worth approximately $44 million and incurred around $8 million in litigation costs." Silver Report at 40.

14. Second, class counsel's work was of consistently high quality. I have reviewed hundreds of class action complaints and motions for class certification in the ten years that I have devoted to studying class actions as my primary vocation. In my

---

[1] Connecticut has separate rules for contingency fees in personal injury cases, which are not relevant here; these statutory limits may be waived by the client. C.G.S.A. § 52-251c (West 2014).

9

experience, the quality of attorney work product in class actions runs the gamut, from the very good to the quite bad, and the lawyers in this case are very good. My review of plaintiffs' consolidated amended complaint, motion for class certification, appellate briefs and motions to compel lead me to conclude that they provided their clients with consistently high quality legal representation during the eight year period that they litigated this case. These documents demonstrate class counsel's skill, experience and effort. I was especially impressed by class counsel's class certification motion and appellate briefs.

15. Third, this litigation was complex and entailed substantial risk. The risk class counsel undertook in devoting significant resources to this case was high, supporting the need for a generous award. I agree with Charles Silver's conclusion that given the risks associated with a RICO class action of this type, a one-third award is reasonable, and approximates what a sophisticated client would agree *ex ante* to pay for the services rendered. *See* Silver Report at 26. It was extraordinarily difficult to obtain class certification in RICO cases in 2006 when this case was filed. *See* Robert H. Klonoff, *The Decline of Class Actions*, 90 Wash. U. L. Rev. 729, 793 (2013) (describing difficulty of obtaining certification of RICO class actions). Professor Charles Silver offers a convincing account of the difficulty of certifying a RICO class action in his Report, which is consistent with my observations of the case law in this area. *See* Silver Report at 33-37. Although two years after this case was filed the

Supreme Court held that proof of reasonable reliance is not an element of a RICO claim, *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), proximate causation still must be shown, *Holmes v. SIPC*, 503 U.S. 258 (1992).  As a result, certifying a RICO class action continues to present difficulties.  In the aftermath of the Supreme Court's decision in *Comcast v. Behrend*, 133 S.Ct. 1426 (2013), which focused on rigor in evaluation of the class's damages model at the certification stage, the requirements of RICO make defense challenges to plaintiffs' damages models more likely.  It is notable that class counsel here was able to successfully defend class certification and that their work resulted in an important and influential Second Circuit decision regarding the reach of *Comcast* in RICO cases. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013).[2]  This achievement is attributable to class counsel's lawyering skills, brief writing and, perhaps most of all, their tenacity in fact gathering.  While it was possible in this case to create a model for determining each plaintiff's damages, the obstacles to obtaining the data necessary to put that model to work and in translating the data to a useable format were numerous and difficult to overcome.  These challenges required significant investment on the part of class counsel without knowing whether they would

---

[2] Regarding the potential influence of this decision, Prof. Coffee and I highlighted this case in our summary of developments in the law of class certification at the ABA Annual Class Action Institute last year.  We concluded that it may make the path to RICO class action certification easier for plaintiffs despite *Comcast*, but the jury is still out on that question.

11

ultimately be able to obtain and translate all the needed data into a useable format. If they had failed, they likely would have had difficulty proving damages at trial and risked de-certification of the class. By their investment of expertise, time, energy and money in this case, class counsel has been able to achieve a very good result for their clients and contributed to the deterrence effect of the law, so that perhaps other businesses will not suffer such violations in the future.

16. Finally, public policy supports an award of one third of the common fund in this case. The results achieved in this class action are exceptional; such high quality, responsible and beneficial class action practice should be encouraged and incentivized. The best tool in the court's arsenal for doing so is to provide successful lawyers with fees that justify taking such risks. For these reasons, a fee award of one third of the common fund is reasonable here.

17. I declare the foregoing is based on information known to me and that it is true and accurate to the best of my knowledge, subject to the laws against perjury pursuant to 28 U.S.C. § 1746.

August 29, 2014

_____
Alexandra D. Lahav